HARGIS and Another *v.* THE INHABITANTS OF CONGRESSIONAL TOWNSHIP, &C.

LIMITATIONS.—SCHOOL LANDS.—Where lands were selected by the secretary of the treasury for school purposes, under the act of congress of *May* 20th, 1826, the title vested in the inhabitants of that congressional township, and a cause of action to recover the possession of the lands from one holding them adversely accrued at that time.

SAME.—Color of title is not necessary to constitute an adverse holding which will bar an action under the statute of limitations.

SAME.—The fact that the claimant entered into possession of the land while the title was in the *United States*, did not prevent his holding from becoming adverse to the township so soon as the title vested in it.

APPEAL from the *Pike* Circuit Court.

GREGORY, J.—Suit by the appellee against the appellants for the possession of a quarter section of land. The case was submitted to the court below on an agreed statement of facts. In 1826, the title to the land was in the *United States*, and so continued until the 14th of *March*, 1835, when the same was legally and properly selected by the secretary of the treasury for the appellee, under and in accordance with the provisions of the act of congress of *May* 20th, 1826, thereby vesting the title thereto in the appellee. In 1826, *John Becknell*, without any authority from the *United States*, entered into the possession of the premises, and in 1832 made a parol sale thereof to *William Goodman.* *Goodman*, in 1854, sold the west half of the land to *William Becknell*, who sold the same in *September*, 1863, to *George Goodman*, who, on the 29th of *February*, 1864, conveyed it to *Martha Jane Hargis*, under whom the appellants hold. This was the first deed executed for any portion of the land. *William Goodman*, in 1860, sold the east half of the land to *McLee Goodman* and *Sylvester Davenport*, who sold it to *William H. Hargis* and *George W. Hargis*, under whom the appellants hold and claim as tenants. *William Goodman* did not execute any deed of conveyance to his vendees, but when the latter sold to *William H. Hargis* and *George W. Hargis*, *Goodman* conveyed the east half of the land, by an

agreement between the parties, to them. Each of the parties, from *William Goodman* to the present claimants inclusive, from the times of the respective purchases of the land until the several sales thereof, was in the actual, open, notorious, exclusive, continuous and uninterrupted possession of the premises so bought, claiming the same in good faith in fee simple, but without any written color of title thereto, except those under whom appellants claim possession. *William Goodman*, during his possession, knew of an outstanding claim to the land under a law of congress donating lands for school purposes. And since *Martha Jane Hargis* bought the west half of the land, she and her tenants have been in possession thereof. And since *William H. Hargis* and *George W. Hargis* bought the east half of the land, they and their tenants have been in possession thereof.

The statute of limitations provides, that actions for the recovery of the possession of real estate shall be commenced within twenty years "after the cause of action has accrued, and not afterwards." 2 G. & H., § 211, p. 158. In 1835, some thirty years before this action was commenced, the appellee became the legal owner, and entitled to the possession of the land in controversy. *Goodman* was then in the actual, open, notorious and exclusive possession thereof, claiming to be the owner in fee. Clearly the cause of action then accrued in favor of the appellee against *Goodman*. The present claimants trace their possession to the latter by privity of contract, as we construe the agreement of facts, and are protected by the statute. It is difficult to see how *Goodman's* knowledge of an outstanding claim to the land could change the fact that the right of action accrued to the appellee upon the acquisition of the title from the *United States*. Color of title is not necessary to constitute an adverse holding, so as to bar an action under this statute. *Bauman et al. v. Grubbs*, 26 Ind. 419. *Goodman's* vendor entered into the possession of the land while the title was in the *United States*, and for that reason it is claimed that the possession was not adverse.

In *Campbell* v. *Thomas*, 9 B. Mon. (Ky.) 82, the defendant entered into the possession, in 1816, of lands belonging to the commonwealth, and continued in possession till the suit was commenced in 1848. The plaintiff obtained the government title in 1823. The court, after stating that the commonwealth could not be prejudiced by the defendant's possession, say: "Inasmuch, however, as the occupant claimed the land as his own, his possession, according to the doctrine uniformly held by this court on the subject, became adverse to *Thomas* so soon as he obtained his patent, and if he permitted such adverse possession to continue uninterrupted for twenty years, without entry or suit by him to divest it, it forms a complete bar to his possessory right."

In *La Frombois* v. *Jackson*, 8 Cow. 589, JONES, Chancellor, says: "But the grantee of the people, in common with all other individuals, must perfect his title by entry upon the settler, within twenty years after his title accrues under the patent, or his entry will be barred, and his remedy by ejectment lost."

We think the court below erred in overruling the appellant's motion for a new trial.

The judgment is reversed, with costs, and the cause remanded to said court, with directions to grant a new trial, and for further proceedings.

*C. M. Allen* and *F. W. Viehe*, for appellants.

*O. F. Baker, J. A. Beck, W. E. Niblack* and *W. H. De Wolf*, for appellee.