## MOORE v. HINKLE.

[No. 18,443. Filed June 14, 1898. · Rehearing denied Oct. 25, 1898.]

EVIDENCE.—*Weight Of.*—The Supreme Court cannot weigh and pass upon conflicting evidence. *pp. 343, 344.*

ADVERSE POSSESSION.—*Character of Real Estate.*—*Quieting Title.*— The character of real estate is of controlling influence in determining what acts of ownership, use, or occupancy are adverse. *p. 345.*

SAME.—*Nonresidence of Claimant.*—*Quieting Title.*—Where title to real estate has accrued in favor of one who exercises the only act of ownership over same, as against the true owner thereof, the true owner is not reinstated simply by the fact of the nonresidence of the adverse claimant. *p. 346.*

INSTRUCTIONS.—*Quieting Title.*—No error was committed in instructing the jury in the trial of an action to quiet title to real estate that it was the duty of the jury "to take the law as given by the court." *p. 347.*

ADVERSE POSSESSION.— *Nature of Claim.*— *Quieting Title.*— The acquisition of title by adverse possession is predicated upon the statute of limitation, and by it the title of the true owner is extinguished as effectually as by conveyance, and twenty years' adverse possession under claim and color of title does not depend upon a previous good faith claim of title. *pp. 347, 348.*

From the Clinton Circuit Court.   *Affirmed.*

*James N. Sims* and *William S. Sims,* for appellant.

*Owen E. Brumbaugh* and *Joseph Combs,* for appellee.

HACKNEY, C. J.—This was an action by the appellee to quiet the title to certain real estate. We have carefully read the evidence, which is quite conflicting; and, accepting that which is most favorable to the appellee, we are fully satisfied that it supports the verdict and judgment in his favor. Of course, we

cannot, as appellants' argument implies, weigh and pass upon conflicting evidence. The tract in dispute is but five acres; is quite rough, and but a small portion of it is suitable for cultivation. It has all been uninclosed until recently, when a part of it has been in cultivation and enclosed by appellant. It adjoins on the east lands held for more than fifty years by persons claiming to own, and exercising acts of ownership over it; and it also adjoins on the north and west lands owned by the appellant and his predecessors for many years. From the year 1840, or earlier, the owners of the lands on the west have claimed ownership, have exercised acts of ownership, and since 1854 have paid annually taxes upon said five-acre tract; and it has remained upon the tax duplicates in the names of owners of the lands upon the west of it. For a number of years prior to 1865 one Winship owned the lands west of the tract in dispute, and was in actual occupancy thereof, claiming to own the five-acre tract; cutting, from time to time, the saw timber from the same; cutting timber for repairing a milldam, and cutting poles and brush for the same purpose; maintaining a private way upon it; paying the taxes; blazing the outlines of the tract; the public records disclosing that it was taxed in his name, and the tract being known in the neighborhood as the "Winship Land." In 1865 he sold and conveyed said tract, with the lands adjacent so owned by him, to Mrs. McKennan, who went into the occupancy of said lands; living upon and cultivating the adjacent lands; claiming the ownership of the five-acre tract, in connection with that upon which she resided; cutting fire wood and saw timber; digging upon it for minerals; turning stock upon it; offering it for sale; paying the taxes, and measuring its outlines; the transfer records and tax duplicates disclosing title in

her name, until in 1872 or 1873, when she sold the land so purchased from Winship, excepting ten acres, a part of which being the said five acre tract, and thereafter vacated a portion of the adjacent lands. Thereafter she paid the taxes upon said five acre tract. Members of her family visited it ten or twelve times, and sought purchasers for the same. She claimed to be the owner thereof, and the land was known in the community as the "McKennan Land" until, in 1882, she sold and conveyed the same to Hinkle, the appellee. Since 1883, when appellant became the owner of the land south and east of said tract, adverse claims have been made by him; and during the last eight or nine years a portion of the five acre tract has been fenced and cultivated by him, all without the knowledge or consent of Hinkle until about two years since, when Hinkle notified him to desist, since which notice he has disclaimed ownership and has sought to purchase the tract from Hinkle. Prior to appellant's ownership of said adjacent lands, his father, then in control of said lands, recognized the adverse ownership of McKennan in the five acre tract.

The character of real estate is of controlling influence in determining what acts of ownership, use or occupancy are adverse. Neither actual occupancy, cultivation nor residence is necessary; and occupancy of a part of a tract, under color of title, is constructive occupancy of the whole. *Worthley* v. *Burbanks*, 146 Ind. 534, and authorities there cited. Before the appellant's occupancy began (indeed, before Hinkle purchased), the land in question seems to have been occupied, actually and constructively, for a period of at least twenty years, in a manner, considering its character, to constitute adverse possession. The acts of ownership by Winship and Mrs. McKennan seem to have been such as lands of like character were rea-

sonably adapted to; and they were exercised without let or hindrance from any one, and in disregard of all others. This was sufficient. See authority first cited.

Much importance is attached by appellant's learned counsel to the fact that during a small part of the period of Mrs. McKennan's claim of ownership, she resided out of the State, and that, during Hinkle's claim of ownership, he resided out of the State. Such fact is not conclusive against one claiming by adverse possession. If title has accrued against the true owner, in favor of one who exercises the only act of ownership over the land, though such acts are but slight after title accrues, the true owner is not reinstated simply by the fact of the nonresidence of the adverse claimant. If the title by adverse possession was acquired by the appellee and his predecessors, then the burden would rest upon the appellant to show that he had acquired a superior title. That he did is not seriously insisted upon; and in view of his denial of title in himself, and his efforts to purchase from the appellant, thereby recognizing the appellants' title, he could not well insist that he stood before the jury favorably in claiming a title by adverse possession, since Mrs. McKennan sold a part of her land, and gave up her residence upon it.

Numerous objections are urged to instructions, the most of which are so general as not to present clearly any question for decision. One instruction advised the jury that it was competent for the appellee to prove title by conveyances from the government, or from some remote grantor in possession in good faith, or by twenty years' adverse possession. It is said that the allegations of the complaint are not sufficiently comprehensive to admit such proofs of title. We are not advised as to the respect in which the allegations of the complaint would not admit of

proof of either of the sources of title mentioned. It is further urged that this instruction omitted to advise the jury that the ·possession in the remote grantor necessary was "under claim of title." The instruction did not undertake to give the elements of adverse possession, but was intended simply to indicate the scope of the issue. Other instructions gave the elements of adverse possession. However, it is difficult to see the distinction between a conveyance by one in possession in good faith, and a conveyance by one in possession under claim of title, if we were to accept the instruction as attempting to cover the elements of adverse possession.

It is complained, also, that the court erred in instructing that it was the duty of the jury "to take the law as given * * * by the court." In a civil trial the jurors do not decide for themselves the law of the case, as in criminal trials. The instruction was correct.

The court, in another instruction, directed the jury that if Mrs. McKennan purchased from Winship in possession, and Hinkle purchased from her in possession, and if both McKennan and Hinkle took and held continuously the possession of the land, claiming to be the owners respectively and exercising acts of ownership thereof, from 1865 to a time eight or nine years ago, when the appellant, without right, and without the knowledge or consent of Hinkle, went into possession, and occupied the same without right, the appellee should recover.

It is said Mrs. McKennan's claim of title must have rested upon a good faith claim of title by Winship. We do not understand that twenty years' adverse possession in good faith under claim and color of title must depend upon a previous good faith claim of title. Even if Winship held in bad faith, and it is

not necessary to tack his possession upon that of Mc-
Kennan and Hinkle to constitute the required period
of adverse possession, the requisite occupancy and
other elements of adverse possession by McKennan
and Hinkle would suffice. The acquisition of title by
adverse possession is predicated upon the statute of
limitations, and by it the title of the true owner is
extinguished as effectually as by conveyance. The
rule protects the adverse claimant without even color
of title. *Roots* v. *Beck*, 109 Ind. 472; *Marley* v. *State,
ex rel.*, 147 Ind. 145.

In a further instruction, the jury were directed
that actual occupancy, cultivation, or residence upon
the land is not necessary, if the land is so situated as
not to admit of any permanent useful improvement,
and if the continued claim of ownership had been evi-
denced by public acts of ownership, under claim and
color of title, such as would be exercised over prop-
erty which he claimed in his own right, and would
not exercise over property which he did not claim.
As a general proposition, this is the law. *Worthley*
v. *Burbank, supra.* It is said also to have been inap-
plicable to the evidence. In this, counsel are mis-
taken. The instruction applied to the appellee's
theory of the case, upon the possession of any one or
more of those who claimed adverse possession. It
was applicable alike to the claim of the appellant to
a title by adverse possession.

The giving and the refusal of other instructions
are objected to, but no specific grounds of objection
are stated, nor is it attempted to be shown wherein
they violate any legal rule. They are, therefore,
passed without consideration. No available error
being shown, the judgment is affirmed.